**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

ALEXFEL SOTOMAYOR,

      Petitioner,

v.                                  Case No. 8:14-cv-2078-T-36TGW

SECRETARY, DEPARTMENT
OF CORRECTIONS,

      Respondent.

_____/

## ORDER

Alexfel Sotomayor, a Florida inmate, filed a *pro se* petition for writ of habeas corpus under 28 U.S.C. § 2254 challenging his Manatee County conviction. (Dkt. 1.) In the response (Dkt. 10), Respondent does not contest the petition's timeliness. Sotomayor filed a reply. (Dkt. 13.) Upon consideration, Sotomayor's petition will be denied.

## PROCEDURAL HISTORY

Sotomayor was convicted after a jury trial of second degree murder with a firearm. (Dkt. 12, Ex. 1, pp. 41-42.) The trial court sentenced him to life in prison. (*Id.*, p. 51.) The state appellate court *per curiam* affirmed. (Dkt. 12, Ex. 5.) Sotomayor filed a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850. (Dkt. 12, Ex. 7.) The state postconviction court summarily denied relief, and the state appellate court *per curiam* affirmed. (Dkt. 12, Exs. 8, 12.)

## FACTS[1]

_____

[1] This factual summary is derived from the trial transcript and the appellate briefs.

Courtney "C.C." Walker and Justus Walker had a "rocky" marriage. C.C. was romantically involved with Sotomayor and had signed a lease for an apartment where Sotomayor began living. Justus knew of the affair but was willing to take C.C. back, and he told her to choose someone. C.C. and Justus spent the evening of March 7, 2009, together. Later that night, however, C.C. Walker went to Tequila Beach, the bar where she worked. There, she and Sotomayor were observed saying, "I love you." But they were also seen arguing, and Sotomayor twice physically pulled her back when she tried to leave.

Walker made plans for her co-workers Kristie Zelina, Brittany Cowan, and Rachel Conville to pick her up at the apartment that night because she was arguing with Sotomayor. On the way to the apartment, Zelina received a phone call from Walker. Zelina heard Walker screaming hysterically and screaming the name "Alex," and heard a "ch-ch" sound that she believed to be a gun cocking. The phone went silent. Moments after pulling into the apartment complex, Zelina and Cowan observed Sotomayor exiting the complex in his car and heard him screaming through the open car window. No one answered the apartment door.

Zelina, Cowan, and Conville made telephone contact with Sotomayor a short time later. He was hysterical and said that he and Walker had been robbed and that Walker was dead in the closet. Cowan could overhear Sotomayor tell Conville on the phone[2] that they had been robbed by two men.

Later that night, Sotomayor called an acquaintance, Gissel Dipierro, and told her that he had killed Walker. When Dipierro asked why he did not call 911 for an ambulance,

---

[2] The State could not locate Rachel Conville to testify at trial. (Dkt. 12, Ex. 2, Vol. V, pp. 701-02.)

Sotomayor responded, "You don't understand, I blew her brains out." He called Dipierro back to ask her to a do him a favor once "they" inevitably contacted her based on his cell phone record, and to say that he was robbed.

Sotomayor arrived at the home of another acquaintance, Matthew Collins, in the early morning hours of March 8, 2009. He told Collins that he had shot Walker in the head with an assault rifle and killed her. Sotomayor stated that he threw the rifle in a gutter. He left two other firearms at Collins' house. Sotomayor took a shower and borrowed some of Collins' clothes before leaving. Police later recovered a .40 caliber handgun and a 12 gauge shotgun from Collins' backyard.

In the meantime, police found Walker dead inside a bedroom closet in the apartment. She had been shot in the head. A fired 7.62 x 39 caliber cartridge case recovered from the bedroom was analyzed and found to have been fired from an AK style assualt rifle. Collins knew Sotomayor to own an assault rifle and had seen him with one before. Police also recovered 7.62 x 39 rifle cartridges from Sotomayor's car.

Sotomayor spoke to police later on the night of Walker's death. He said that when he opened the apartment door, three men carrying assault rifles rushed inside. Sotomayor stated that he ran away and returned later to find Walker inside, after which he locked the door, called 911, and drove to the police station. He admitted, however, that he had been arguing with Walker about her husband. When asked whether he shot Walker, Sotomayor responded that he did not have firearms. After police told Sotomayor that they would perform gunshot residue testing on him and left the interview room, he was observed wiping his hands off on his clothes.

## STANDARD OF REVIEW

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this proceeding. *Wilcox v. Florida Dep't of Corr.,* 158 F.3d 1209, 1210 (11th Cir. 1998). Habeas relief can only be granted if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Section 2254(d), which sets forth a highly deferential standard for federal court review of a state court adjudication, states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In *Williams v. Taylor,* 529 U.S. 362, 412-13 (2000), the Supreme Court interpreted this deferential standard:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable . . . an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 694 (2002). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was

an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

The state appellate court affirmed Sotomayor's conviction and sentence and affirmed the denial of postconviction relief without discussion. The court's decisions warrant deference under § 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore,* 278 F.3d 1245, 1254 (11th Cir. 2002). *See also Richter,* 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.").

## INEFFECTIVE ASSISTANCE OF COUNSEL

A claim of ineffective assistance of counsel is analyzed under the test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* requires a showing of deficient performance by counsel and resulting prejudice. *Id.* at 687. To show deficient performance, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 687-88. However, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* Additionally, "a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.*

Sotomayor must demonstrate that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the

judgment." *Id.* at 691-92. To show prejudice, Sotomayor must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Sustaining a claim of ineffective assistance of counsel on federal habeas review is difficult because review is "doubly" deferential to counsel's performance and the state court's ruling. *Richter*, 562 U.S. at 105. *See also Cullen v. Pinholster*, 563 U.S. 170, 202 (2011) (a petitioner must overcome the "'doubly deferential' standard of *Strickland* and AEDPA."). If a claim of ineffective assistance of counsel can be resolved through one of the *Strickland* test's two prongs, the other prong need not be considered. 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one.").

## DISCUSSION

### Grounds One(A)(1) and One(A)(2)[3]

In Ground One(A)(1), Sotomayor asserts that the trial court erred in failing to conduct an adequate *Nelson*[4] hearing when he sought to have his trial counsel removed due to counsel's lack of preparation. In Ground One(A)(2), Sotomayor alleges that the trial court erred in allowing the admission of "irrelevant and highly prejudicial" evidence

---

[3] Sotomayor raises numerous claims of trial court error and ineffective assistance of trial counsel in Ground One but does not specifically enumerate the claims. The Court has therefore labeled his three allegations of trial court error as Grounds One(A)(1)-(3) and his five claims of ineffective assistance of trial counsel as Grounds One(B)(1)-(5).

[4] *See Nelson v. State*, 274 So.2d 256 (Fla. 4th DCA 1973) (under Florida law, when a defendant asks that counsel be discharged due to incompetence, the trial court must determine whether adequate grounds exist to do so).

concerning firearms that were not used during the offense. Sotomayor alleges violations of his federal rights to due process and a fair trial.

Sotomayor's claims are not cognizable in this proceeding. Federal habeas relief is only available if a petitioner's custody violates the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a). Whether the state trial court complied with Florida's procedures under *Nelson* for addressing a motion to discharge counsel is a state law question. Similarly, whether the state trial court correctly determined that firearms evidence was relevant and thus admissible under Florida's evidentiary rules is a matter of state law. Accordingly, Sotomayor's claims are not cognizable on federal habeas review. *See Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988) ("[A] habeas petition grounded on issues of state law provides no basis for habeas relief."). This is so even though Sotomayor characterizes the claims as involving his federal rights. *See id.* ("This limitation on federal habeas review is of equal force when a petition, which actually involves state law issues, is 'couched in terms of equal protection and due process.'") (quoting *Willeford v. Estelle*, 538 F.2d 1194, 1198 (5th Cir. 1976)).

Alternatively, even if Sotomayor's arguments are interpreted as presenting federal claims, they are procedurally barred. A federal habeas petitioner must exhaust his claims for relief by raising them in state court before presenting them in his petition. 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."). The requirement of exhausting state remedies as a prerequisite to federal review is satisfied if the petitioner "fairly presents" his claim in each appropriate state court and alerts that court to the federal nature of the claim.

28 U.S.C. § 2254(b)(1); *Picard v. Connor*, 404 U.S. 270, 275-76 (1971). Sotomayor failed to satisfy the exhaustion requirement because, on appeal, he presented the claims as involving issues of state law only. (Dkt. 12, Ex. 3, pp. 13-23, 28-32.)[5]

State procedural rules do not allow for successive direct appeals. *See* Fla. R. App. P. 9.140(b)(3) (a defendant must appeal a final judgment within 30 days following rendition of a written order imposing sentence). Accordingly, Sotomayor's claims are procedurally defaulted. *See Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001) ("If the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established."). Sotomayor has not argued or established that either the cause and prejudice or fundamental miscarriage of justice exception applies to overcome the default. As a result, Grounds One(A)(1) and One(A)(2) are barred from federal habeas review.

**Ground One(A)(3)**

## I.

Sotomayor asserts that the trial court violated his federal right to present a defense when it prohibited witness Mickey Maguire from giving exculpatory testimony. At trial, the defense proffered Maguire's testimony. He testified that on approximately March 9 or 10, 2009, a man named Dante arrived at his home. (Dkt. 12, Ex. 2, Vol. V, pp. 704-05, 707.) Maguire testified that Dante said that Dante and two other men went into an apartment; that

---

[5] While Sotomayor addressed his Sixth Amendment right to effective counsel in presenting his *Nelson* claim (Dkt. 12, Ex. 3, p. 18), he failed to specifically assert that the trial court's alleged error in conducting a *Nelson* hearing resulted in a violation of his federal rights to due process and a fair trial. (Dkt. 12, Ex. 3, pp. 13-23.)

"the guy" who was there ran out; that Dante and his associates "got what they wanted to get" but did not want to pay the woman who was there, C.C.; and that one of the men with Dante shot C.C. (*Id.*, pp. 705-07.) The trial court ruled that Maguire could not present this testimony to the jury because it did not meet the hearsay exception for statements against interest under § 90.804, Fla. Stat. (*Id.*, pp. 773-76.)[6]

Sotomayor claims that the state court's ruling violated his federal rights,[7] because it left him with "no way to corroborate his theory of defense." (Dkt. 1, p. 7.) *See Chambers v. Mississippi*, 410 U.S. 284, 294 (1973) ("The right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations. The rights to confront and cross-examine witnesses and to call witnesses in one's own behalf have long been recognized as essential to due process."); *Washington v. Texas*, 388 U.S. 14, 19 (1967) (The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense . . . This right is a fundamental element of due process of law.").

But the right to present a defense is not without limitations. *Chambers* recognized that, "[i]n the exercise of [the right to present witnesses], the accused, as is required of the State, must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." 410 U.S. at 302. *See also Taylor v. Illinois*, 484 U.S. 400, 410 (1988) (the accused "does not have an

---

[6] Maguire explained that, shortly before trial, he was housed in a pod with Sotomayor in the Manatee County Jail and agreed to testify to what he knew. (Dkt. 12, Ex. 2, Vol. V, p. 712.)

[7] Whether the court properly excluded Maguire's testimony under Florida's evidentiary rules presents a question of state law that does not state a sufficient claim for federal habeas relief. *See McCullough v. Singletary*, 967 F.2d 530, 535 (11th Cir. 1992) ("A state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved.").

unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence."); *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (the Supreme Court has never "questioned the power of the States to exclude evidence through the application of evidentiary rules that themselves serve the interests of fairness and reliability–even if the defendant would prefer to see that evidence admitted.") (citing *Chambers*, 410 U.S. at 302). With respect to the hearsay rule in particular, *Chambers* recognized that "[o]ut-of-court statements are traditionally excluded because they lack the conventional indicia of reliability." 410 U.S. at 302.

Sotomayor has not shown any constitutional error in the exclusion of Maguire's proffered testimony regarding Dante. And even assuming that he had made such a showing, Sotomayor fails to demonstrate entitlement to relief. Any constitutional error by the trial court in excluding this evidence is subject to the harmless-error test set out in *Brecht v. Abrahamson*, 507 U.S. 619 (1993):

> In § 2254 proceedings, federal courts must evaluate constitutional errors under the harmless-error standard articulated in *Brecht v. Abrahamson*, 507 U.S. 619, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993). As *Brecht* explained, "[federal] habeas petitioners may obtain plenary review of their constitutional claims, but they are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'" *Id.* at 637, 113 S.Ct. at 1722. To find "actual prejudice," a federal habeas court must conclude that the error "had substantial and injurious effect or influence in determining the jury's verdict." *Id.* (quoting *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S.Ct. 1239, 1253, 90 L.Ed. 1557 (1946)).

*Hittson v. GDCP Warden*, 759 F.3d 1210, 1233-34 (11th Cir. 2014) (footnote omitted).

Sotomayor has not established that the omission of Maguire's proposed testimony had a substantial and injurious effect or influence on the verdict. The jury was aware of Sotomayor's robbery theory through his statements to acquaintances and police on the

night of Walker's death.  Moreover, the State presented overwhelming evidence of his guilt.

To prove that Sotomayor was guilty of second degree murder with a firearm, the State had

to prove beyond a reasonable doubt that (1) Walker was dead; (2) the death was caused

by the criminal act of Sotomayor; (3) there was an unlawful killing of Walker by an act

imminently dangerous to another and demonstrating a depraved mind without regard for

human life; and (4) Sotomayor carried, displayed, used, threatened to use, or attempted

to use a firearm.  (Dkt. 12, Ex. 2, Vol. VI, pp. 896-97.)  An act is imminently dangerous to

another and demonstrating a depraved mind if it is an act that (1) a person of ordinary

judgment would know is reasonably certain to kill or do serious bodily injury to another; (2)

is done from ill will, hatred, spite, or an evil intent; and (3) is of such a nature that the act

itself indicates an indifference to human life.  (*Id.*, p. 897.)

The State presented significant evidence that Walker's death was caused by

Sotomayor's criminal act and that he used a firearm.  Sotomayor was observed leaving the

apartment complex where Walker was found shot to death only minutes after Zelina

received a phone call in which she heard Walker screaming the name "Alex" and a "ch-ch"

noise she thought was a gun cocking.[8]  (Dkt. 12, Ex. 2, Vol.  III, pp. 372-73, 376-79; Vol.

IV, p. 447.)  That same night, Sotomayor confessed to Collins that he shot Walker in the

head and disposed of the assault rifle that he used to commit the murder.  (Dkt. 12, Ex. 2,

Vol. III, pp. 407, 416-17.)  Sotomayor also confessed to Dipierro, explicitly telling her that

he blew Walker's brains out.  (Dkt. 12, Ex. 2, Vol. IV, p. 466.)  It was not until a later

conversation that Sotomayor asked Dipierro to do him a favor and say he was robbed if she

---

[8] Detective Price testified that an AK47 assault rifle would make a "racking" or "ch-ch" sound when a round was loaded in the chamber.  (Dkt. 12, Ex. 2, Vol. V, pp. 667-68.)

was asked. (*Id.*, pp. 468, 473.)[9]  Furthermore, evidence indicated that Sotomayor owned a rifle that used the type of fired cartridge case found in the apartment.  (Dkt. 12, Ex. 2, Vol. III, pp. 416-17; Vol. IV, p. 582, Vol. V, pp. 639-42.)  The same type of ammunition was found in his car. (Dkt. 12, Ex. 2, Vol. IV, pp. 586-91.)

The State also presented evidence from which the jury could find that the act was imminently dangerous to another and demonstrated a depraved mind without regard for human life.  The jury could conclude that a reasonable person would know that shooting at another person's head with an assault rifle would be likely to cause death or serious bodily injury and would indicate an indifference to human life.  *See, e.g., Keltner v. State*, 650 So.2d 1066, 1067 (Fla. 2d DCA 1995) ("[W]e find that the act of pointing a loaded firearm in someone's direction and then firing it is imminently dangerous to another and evinces a depraved mind.").

The State also presented evidence from which the jury could find that Sotomayor acted from ill will, hatred, spite, or an evil intent.  Walker spent the evening with her husband, who told her to choose someone, and she planned to be picked up at the apartment because she had been arguing with Sotomayor.  (Dkt. 12, Ex. 2, Vol. III, pp. 290-

---

[9] Dipierro testified that she received a total of four calls from Sotomayor.  With regard to the robbery scenario he told her about during the last phone call, she testified:

Q.    Okay.  Now, is it possible he was reporting to you what had happened?

A.    No.

Q.    Okay.

A.    It's not possible only because it was the last phone call, and it was a phone call asking me to say something that he hadn't told me previously in the other phone calls.

(Dkt. 12, Ex. 2, Vol. IV, p. 473.)

94, 367-68, 426.)  Additionally, Sotomayor admitted to police that he and Walker argued about her husband, and when they were seen arguing on the night of the murder, Sotomayor twice physically pulled Walker back to him.  (*Id.*, pp. 320-21, 327; Vol. V, p. 676.)  *See, e.g., Chaffin v. State*, 121 So.3d 608, 613 (Fla. 4th DCA  2013) (evidence supported a second degree murder conviction when it "established that Chaffin and [the victim] had a complicated relationship which was fraught with conflict" and that the relationship "may have sparked ill will in Chaffin's mind.").

Additionally, the jury did hear a limited version of the prohibited testimony.  The defense called Maguire to testify about another matter.  During his testimony, he informed the jury that the people actually responsible for Walker's murder came to his house and told him what happened:

A    [ ] But after that happened that night, somebody came to my house  - -

Q    Okay, all right.

A    And told me the truth of what happened.

Q    Okay.

A    That he did not shoot nobody.

(Dkt. 12, Ex. 2, Vol. VI, p. 823.)

Maguire also testified:

Q    Okay.  And are you telling the truth about what  - -

A    I'm telling nothing but the truth, why I'm here, the, I'm not here, sir, to get nobody - - I'm here because I know the truth.  That man over there did not murder that girl, I know that for a fact, because the people that did murder her come to my house afterward.  I know the truth.

        THE COURT:        Mr. Maguire, stop speaking.

A        You want the truth - -

        THE COURT:        Stop speaking.

A        - - I'm giving you the truth.

(Dkt. 12, Ex. 2, Vol. VI, pp. 830-31.)[10]

In light of the proceeding as a whole, Sotomayor fails to show that the exclusion of Maguire's testimony about Dante had a substantial and injurious effect or influence on the verdict so as to result in actual prejudice.    Accordingly, he does not demonstrate entitlement to relief.

## II.

During his closing argument, the prosecutor noted that the only information corroborating the robbery theory came from Sotomayor's statements:

> And [the defense] want[s] to tell you that based on that story that he presented that there's reasonable doubt in this case that he's the one who committed the crime.
>
> So where do we get the evidence from that there were three robbers that entered his house and committed this crime?  Where's the only evidence of that come from?  His mouth.  There's no other evidence presented by the State or in the detective's investigation or crime scene investigation that led them to believe there was anything other than a single perpetrator, this defendant.  So if you take what we have without the other evidence the State presented, and you look at the fact that there's a murder, and you look at the statement the defendant gave, there's no reasonable doubt in that as to what happened.

(Dkt. 12, Ex. 2, Vol. VI, p. 872.)

To the extent Sotomayor intends to raise a claim of prosecutorial misconduct, and

---

[10] The jury was taken out of the courtroom after these statements.  (Dkt. 12, Ex. 2, Vol. VI, p. 831.) Upon their return, Maguire was no longer present and the jury was simply informed that the defense had no other questions for Maguire and was resting its case.  (*Id.*, p. 833, 837.)

assuming that this claim is exhausted, Sotomayor is not entitled to relief. Closing argument is designed to "assist the jury in analyzing, evaluating and applying the evidence." *United States v. Pearson*, 746 F.2d 787, 796 (11th Cir. 1984). The prosecutor may comment on the evidence and express the conclusions he contends the jury should draw from the evidence. *United States v. Johns*, 734 F.2d 657, 663 (11th Cir. 1984). *See also McArthur v. State*, 801 So.2d 1037, 1040 (Fla. 5th DCA 2001) ("The courts generally allow wide latitude in closing arguments by permitting counsel to advance all legitimate arguments and draw logical inferences from the evidence.").

Furthermore, to obtain relief, Sotomayor must show that an improper comment prejudiced his substantial rights. *Sexton v. Howard*, 55 F.3d 1557, 1559 (11th Cir. 1995). "A defendant's substantial rights are prejudicially affected when a reasonable probability arises that, but for the remarks, the outcome [of the trial] would be different." *United States v. Hall*, 47 F.3d 1091, 1098 (11th Cir. 1995) (citing *Kennedy v. Dugger*, 933 F.2d 905, 914 (11th Cir. 1991)). *See Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (on habeas review, "[t]he relevant question is whether the prosecutor's comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'") (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974)); *Tucker v. Kemp*, 802 F.2d 1293, 1296 (11th Cir. 1986) (en banc) ("If a reviewing court is confident that, absent the improper remarks, the jury's decision would have been no different, the proceeding cannot be said to have been fundamentally unfair.").

Sotomayor has not shown that the prosecutor's comment was improper. "While a prosecutor may 'not ridicule or otherwise improperly attack the defense's theory of the case,' a prosecutor is permitted to suggest to the jury that 'based on the evidence of the

case, they should question the plausibility of the defense's theory.'" *Davis v. State*, 136 So. 3d 1169, 1203 (Fla. 2014) (quoting *Valentine v. State*, 98 So.3d 44, 55-56 (Fla. 2012)). Sotomayor cites no clearly established federal law[11] providing that the prosecutor could not comment on the reliability or credibility of Sotomayor's theory of defense following the exclusion of evidence that would have supported it. And contrary to Sotomayor's argument, the prosecutor did not say that Sotomayor presented "no other evidence," thus misrepresenting or shifting the burden of proof to Sotomayor.[12] Rather, the prosecutor said no other evidence as developed and presented by the State led the investigators to believe that Walker's death was caused by anyone other than Sotomayor, acting alone.

Finally, even assuming the prosecutor's statement was improper, Sotomayor still would not be entitled to relief. As addressed above, the State presented overwhelming evidence of Sotomayor's guilt, including his two separate confessions to Collins and Dipierro. Furthermore, the trial court instructed the jury that the burden of proof was the State's and that Sotomayor was not required to present evidence or prove his innocence. (Dkt. 12, Ex. 2, Vol. VI, pp. 901, 903.) "[J]urors are presumed to follow the court's instructions." *Brown v. Jones*, 255 F.3d 1273, 1280 (11th Cir. 2001). Considering the prosecutor's comments in the context of the trial as a whole, Sotomayor fails to show that the comments so infected the trial with unfairness as to make the resulting conviction a denial of due process. *See Darden*, 477 U.S. at 181.

---

[11] The phrase "clearly established Federal law" encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. at 412.

[12] A prosecutor "must refrain from making burden-shifting arguments which suggest that the defendant has an obligation to produce any evidence or to prove innocence." *United States v. Simon*, 964 F.2d 1082, 1086 (11th Cir. 1992).

Accordingly, Sotomayor has not shown that the state court's rejection of his prosecutorial misconduct claim was contrary to or an unreasonable application of clearly established federal law, or was based on an unreasonable determination of the facts. Sotomayor is not entitled to relief on Ground One(A)(3).

**Ground Five**

Sotomayor argues that trial counsel was ineffective for failing to object to the prosecutorial comment addressed above. He argues that the State improperly "benefit[ted]" from its objection to Maguire's testimony by arguing that the defense theory was uncorroborated because Sotomayor presented "no other evidence" in support of it. (Dkt. 1, pp. 16-17.) The state court rejected Sotomayor's claim that counsel was ineffective for failing to object to this statement, finding that "[t]here is nothing in this case that makes the benefit enjoyed by the State in winning its motion somehow 'unfair'" and finding nothing objectionable in the State's comments:

> The State did not comment on what *was not* presented at trial, but merely confirmed that nothing that *was* presented corroborated Defendant's version of events. Cf <u>Ruiz v. State</u>, 743 So. 2d 1, 4 (Fla. 1999) ("The role of the attorney in closing argument is to assist the jury in analyzing, evaluating and applying *the evidence*. . . . he may not suggest that evidence which was not presented at trial provides additional grounds for finding defendant guilty."

(Dkt. 12, Ex. 8, pp. 6-7) (footnote omitted) (emphasis in original).

As the state court found, and as discussed above, Sotomayor has not demonstrated that the State made any improper comment to which counsel should have objected. Furthermore, even assuming the prosecutor's comment was improper, in the context of the entire trial, Sotomayor's substantial rights were not prejudiced. Thus, he has not shown that, even if counsel performed deficiently, he suffered resulting prejudice to satisfy the

second prong of *Strickland*.

The state court did not unreasonably apply *Strickland* or unreasonably determine the facts in rejecting Sotomayor's claim. He is not entitled to relief on Ground Five.

**Ground One(B)(4)**

Sotomayor contends that trial counsel was ineffective in failing to interview Mickey Maguire until the night before jury selection. It appears that counsel first spoke to Maguire on the Sunday night before jury selection and that Maguire provided information that could be used to impeach state witness Matthew Collins. (Dkt. 12, Ex. 2, Vol. V, p. 704.) Then, during a break in the trial, Maguire was deposed and for the first time relayed Dante's statements. (*Id.*, pp. 700, 704-08, 711.) Sotomayor contends that counsel could have uncovered Dante's statements to Maguire sooner. In support, he notes that when counsel proffered Maguire's testimony and asked whether Maguire mentioned Dante when he first spoke to counsel, Maguire stated, "No, we never got that far. But I wanted to talk to you about it." (*Id.*, p. 704.)

Sotomayor raised this claim of ineffective assistance of counsel on direct appeal.[13] The state appellate court rejected it when it *per curiam* affirmed Sotomayor's judgment and sentence. The record supports the denial of this claim. Even assuming that counsel performed deficiently in not eliciting Maguire's statements about Dante sooner, Sotomayor has not shown prejudice. The trial court excluded Maguire's testimony not because of its late disclosure but because it contained inadmissible hearsay. (*Id.*, pp. 773-76.)

---

[13] In Florida, "[a]s a general rule, claims of ineffective assistance of counsel are not ordinarily cognizable on direct appeal. The exception is when the error is apparent on the face of the record, which is rarely the case." *Desire v. State*, 928 So.2d 1256, 1257 (Fla. 3d DCA 2006). On direct appeal, Sotomayor alleged that counsel's alleged ineffectiveness was apparent from the face of the record. (Dkt. 12, Ex. 3, pp. 27-28 .)

Accordingly, this testimony would have been excluded from the jury's consideration even if counsel uncovered it earlier.

Sotomayor therefore fails to demonstrate that the state court's rejection of his claim was contrary to or an unreasonable application of clearly established federal law or was based on an unreasonable determination of the facts. Sotomayor is not entitled to relief on Ground One(B)(5).

**Ground Two**

Sotomayor argues that trial counsel was ineffective for failing to object when the trial court "improperly influenc[ed] the jury not to request to have portions of the trial testimony reread during deliberations." (Dkt. 1, p. 9.) The state court denied Sotomayor's claim:

> In Defendant's first ground, he alleges that his counsel was ineffective for failing to object to the Court's implication that the jury could not ask for a read-back of the trial testimony. Specifically, Defendant contends that his counsel should have objected to the following statement:
>
>> For purposes of your deliberations later it will be your responsibility to accurately recall the testimony. Occasionally jurors are of the mistaken belief that it is a simple process to request that the jury be able to have portions of the testimony reread to assist in deliberations. That is not a simple process at all. Depending upon exactly what is requested it can take up to hours for the pertinent portion of the court reporter's notes to be located, properly transcribed and prepared.
>
> An objection to this statement would have been meritless. Although Defendant is correct in his assertion that "a trial court should not use any language that would mislead a jury into believing read-backs are ***prohibited***," there is nothing that prevents a court from informing the jury about the difficulties of a read-back. *See Francis v. State*, 808 So.2d 110, 130 (Fla. 2001). In this case, the Court informed the jurors that it was not "a simple process" to conduct a read-back; however, the Court also made it abundantly clear that such a process was, in fact, available. Therefore, there was no error in the Court's instruction.
>
> For this reason, any objection to the instruction by defense counsel would

have lacked merit, and counsel cannot be deemed ineffective for failing to make a meritless objection.  *See Valentine v. State*, 98 So.3d 44, 57-58 (Fla. 2012).  Accordingly, Ground One of Defendant's motion is denied.

(Dkt. 12, Ex. 8, pp. 2-3) (footnotes omitted) (emphasis in original).

The court's remark was made during preliminary instructions informing the jurors of their responsibility to listen carefully to the evidence.  (Dkt. 12, Ex. 2, Vol. III, pp. 268-69.) As the state court found, the instruction did not suggest that a read-back was prohibited. This Court must defer to the state court's determination that such an instruction was permissible under Florida law.  *See Will v. Sec'y, Dep't of Corr.*, 278 Fed. App'x 902, 908 (11th Cir. 2008) ("Although an ineffective-assistance-of-counsel claim is a *federal* constitutional claim, which we consider in light of the clearly established rules of *Strickland*, when 'the validity of the claim that [counsel] failed to assert is clearly a question of *state* law, . . . we must defer to the state's construction of its own law.'") (quoting *Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984)); *Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1354-55 (11th Cir. 2005) ("The Florida Supreme Court already has told us how the issues would have been resolved under Florida state law had [petitioner's counsel] done what [petitioner] argues he should have done . . . It is a 'fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters.") (quoting *Agan v. Vaughn*, 119 F.3d 1538, 1549 (11th Cir. 1997)).

As the state court correctly found, counsel did not perform deficiently in failing to raise a meritless objection.  *See Brownlee v. Haley*, 306 F.3d 1043, 1066 (11th Cir. 2002) ("Counsel was not ineffective for failing to raise these issues because they clearly lack merit.").    In addition, Sotomayor fails to show prejudice as a result of counsel's

performance. His claim implies that, if not for this instruction, the jury would have asked for a read-back of testimony and would have rendered a different verdict. This suggestion is too speculative to warrant relief. *See Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (vague, conclusory, or unsupported allegations cannot support an ineffective assistance of counsel claim).[14]

Therefore, as Sotomayor does not show that the state court unreasonably applied *Strickland* or unreasonably determined the facts in denying his claim, he is not entitled to relief on Ground Two.

**Grounds One(B)(2) and Three**

Sotomayor alleges that his trial counsel was ineffective for failing to file a motion *in limine* to exclude evidence of firearms and ammunition that "were irrelevant to the crime charged and very prejudicial to the defense." (Dkt. 1, p. 11.) The State alleged that Walker was killed with an assault rifle that was not recovered. However, the State introduced two other firearms, ammunition, and a box for one of the firearms. Sotomayor raised this claim in his postconviction motion and on direct appeal.

The state court rejected Sotomayor's postconviction claim:

Defendant alleges that his counsel was ineffective for failing to file a motion in limine regarding the admission of certain "irrelevant" firearm and ammunition evidence. Specifically, Defendant alleges that counsel should have filed a motion in limine regarding the following items:

---

[14] Sotomayor contends for the first time in the reply that counsel should have objected because "the court failed to correctly advise the jury that the digital reporting was possible and a recording was possible on the spot." (Dkt. 13, p. 7.) Sotomayor cannot bring a new claim in his reply. *Herring*, 397 F.3d at 1342. And this particular allegation of ineffective assistance of trial counsel is unexhausted because it was not presented to the state court. (Dkt. 12, Ex. 7, pp. 2-5.) The claim is procedurally defaulted because Sotomayor cannot return to state court to file an untimely, successive postconviction motion. *See* Fla. R. Crim. P. 3.850(b), (h). Notwithstanding, Sotomayor's claim remains too speculative to warrant relief because he has not shown a reasonable probability that the jury would have reached a different verdict as a result of having any particular testimony read back to them.

1. Ammunition for a 12-gauge shot gun and a .40-caliber handgun that were not used to commit the crime;

2. A 12-gauge shot gun and a .40 caliber handgun that were not used to commit the crime; and

3. A receipt for the 12-gauge shotgun and a box for the .40-caliber handgun.

Although it is true that defense counsel did not file a motion in limine as to any of these items, he *did* object to their admission. However, counsel was overruled, because the Court concluded that the items were relevant. Therefore, given the fact that the Court overruled counsel's objections, it is clear that the Court also would have denied a similar motion in limine. For this reason, it cannot be said that Defendant was prejudiced by his counsel's failure to file such a motion. Accordingly, Ground Three of Defendant's motion is denied.

(Dkt. 12, Ex. 8, pp. 5-6) (footnotes omitted) (emphasis in original).

The record supports the state court's finding that counsel objected to the identified items as irrelevant and prejudicial, but that the court overruled counsel's objections. (Dkt. 12, Ex. 2, Vol. III, pp. 413-15; Vol. IV, pp. 550-55, 574-79, 598-602.) Given the court's finding that the items were relevant and therefore admissible, Sotomayor has not shown a reasonable probability that the court would have made a different ruling based upon a motion *in limine* to exclude these same items. The record therefore supports the state court's conclusion that Sotomayor failed to meet *Strickland*'s prejudice prong. Accordingly, Sotomayor does not establish that the state court unreasonably applied *Strickland* or unreasonably determined the facts in rejecting his claim on direct appeal or on collateral review.[15] Consequently, Sotomayor is not entitled to relief on Grounds One(B)(2) and

_____

[15] In his reply, Sotomayor now asserts that counsel was ineffective because he would have been able to present more thorough argument and the court would have conducted a hearing had he filed a motion *in limine.* He also claims that the state appellate court "would have been required to consider was there an abuse of discretion which is the standard of review of a trial court's ruling on a motion in limine." (Dkt. 13, p. 13.) Again, Sotomayor cannot raise a new claim in his reply, *Herring*, 397 F.3d at 1342, and this specific allegation of ineffective assistance of counsel is unexhausted and now procedurally defaulted due to his failure

Three.

**Grounds One(B)(5) and Four**

Sotomayor claims that trial counsel was ineffective in presenting a closing argument that was inconsistent with Sotomayor's defense and not guilty plea. He claims counsel "simply never asserted that Petitioner did not kill Courtney Walker. Additionally, counsel failed to tie his argument into even a suggestion of a reasonable doubt defense." (Dkt. 1, p. 14.) Sotomayor raised this claim in his postconviction motion and on direct appeal. The state court denied the postconviction claim:

> Defendant asserts that his counsel was ineffective for failing to argue in his closing argument that Defendant was innocent or that the State had failed to prove guilt beyond a reasonable doubt. This assertion is refuted by the record.
>
> Although counsel never explicitly said that Defendant "is innocent," he did argue to the jury that Defendant did not commit the crime. Specifically, counsel made the following arguments:
>
>> We ask you to consider the circumstances, we ask you to consider the fact that Mr. Sotomayor that [sic] was clearly in a frantic, frenzied state, by all accounts. Even if you believe Ms. Zelina, that she saw him in a white Pontiac with the window halfway down speeding out of the complex, he was screaming. And I suggest to you that that is consistent with the conduct of someone who has seen somebody else do something, or of someone who has committed an act that was accidental or intentional [sic] or without any intent or design, and not an act of someone who has evidenced evil, ill will, malice, or any of those things that must be proven to you beyond a reasonable doubt in order to convict a person of murder in the second degree.

---

to raise it in state court. (Dkt. 12, Ex. 3, p. 24; Ex. 7, pp. 8-10.) Notwithstanding the default, Sotomayor does not show entitlement to relief. He fails to explain what additional argument counsel could have made at a motion *in limine* hearing. Nor does he demonstrate a reasonable probability that such argument would have led to the exclusion of the weapons evidence. Finally, he has not shown a reasonable probability that the state appellate court would have found an abuse of discretion had the issue been raised in a motion *in limine* and rejected.

. . . .

And I suggest to you that no evidence has been offered to you which would be consistent with anything but that Mr. Sotomayor loved Ms. Walker and cared for her, and cared for her deeply.

. . . .

[I]t would be reasonable for you to conclude that under any set of facts, murder in the second degree has simply not been proven.

And I suggest to you that there has not been any evidence put before you that is consistent with anything other than Mr. Sotomayor's love and passion for her . . . .

. . . .

I ask you to consider that if it is your determination that Mr. Sotomayor did have something to do with pulling a trigger of an assault rifle, that you must consider whether it was an act done from ill will, hatred, spite, or an evil intent, or whether it was motivated by some other state of mind.

Likewise, counsel argued on numerous occasions that the State was required to prove its case beyond a reasonable doubt, and that it had not done so. Moreover, upon review of defense counsel's closing argument, the Court finds that the argument was sufficient. Furthermore, there is no reasonable probability that additional mention of "innocence" or "reasonable doubt" would have changed the outcome of this case, and the Court's confidence in these proceedings has not been undermined by the alleged deficiencies in counsel's closing arguments. Therefore, Ground Two of Defendant's motion is denied.

(Dkt. 12, Ex. 8, pp. 3-5) (footnotes omitted).

The record supports the state court's ruling. Counsel argued that the evidence was insufficient to prove that Sotomayor committed second degree murder and that the State had not met its burden of proof. (Dkt. 12, Ex. 2, Vol. VI, pp. 858-69.) Sotomayor has not established a reasonable probability that the outcome of trial would have been different had counsel rephrased his argument to more explicitly assert Sotomayor's innocence.

Accordingly, Sotomayor does not establish that the state court unreasonably applied *Strickland* or unreasonably determined the facts in rejecting his claim on either direct or collateral appeal. He is not entitled to relief on Grounds One(B)(5) and Four.

**Ground One(B)(1)**

Sotomayor argues that trial counsel was ineffective in failing to depose the lead detective and lead crime scene technician. The state appellate court denied this claim without comment when it *per curiam* affirmed Sotomayor's conviction and sentence. Sotomayor has not asserted what information counsel would have uncovered by deposing these witnesses or how such information would have affected the outcome of the trial. Sotomayor's vague assertion is insufficient to establish either prong of *Strickland*. *See Tejada*, 941 F.2d at 1559. Accordingly, the state appellate court's ruling was not contrary to or an unreasonable determination of clearly established federal law. Sotomayor is not entitled to relief on this Ground One(B)(1).

**Ground One(B)(3)**

Sotomayor alleges that trial counsel was ineffective in failing to provide a plausible defense in his opening statement. In support of this allegation, he argues that his attorney "did not [sic] an alternative version of events and he did not ask the jury to even consider the possibility that Petitioner was not guilty." (Dkt. 1, p. 6.)

The state appellate court denied this claim when it *per curiam* affirmed Sotomayor's conviction and sentence on direct appeal. Sotomayor has not established that he was prejudiced as a result of any such omission during the opening statement, when, as addressed, counsel asserted in his closing argument that the State failed to prove beyond a reasonable doubt that Sotomayor was responsible for Walker's death. Accordingly, his

assertion that counsel was ineffective is too vague and conclusory to provide relief.  *See Tejada*, 941 F.2d at 1559.  He does not show that the state appellate court's decision rejecting his claim on direct appeal was contrary to or an unreasonable application of clearly established federal law, or was based on an unreasonable determination of the facts.  Sotomayor is not entitled to relief on Ground One(B)(3).

**Cumulative Error Claim**

Within Ground One, Sotomayor argues that "a combination" of trial court error and ineffective assistance of his trial counsel resulted in violations of his federal rights to due process and a fair trial.  To the extent he asserts that the cumulative effect of the alleged errors resulted in a federal constitutional violation, and assuming this claim was exhausted on direct appeal, he is not entitled to relief.  Because he has not established any error for the reasons alleged in Ground One, his cumulative error claim must fail.  *See United States v. Barshov*, 733 F.2d 842, 852 (11th Cir. 1984) ("Without harmful errors, there can be no cumulative effect compelling reversal.").  The state court's denial of his claim was not contrary to or an unreasonable application of clearly established law and was not based on an unreasonable determination of the facts.

Any claims not specifically addressed in this Order have been determined to be without merit.

It is **ORDERED** that:

1. Sotomayor's petition (Dkt. 1) is **DENIED**.  The Clerk is directed to enter judgment against Sotomayor and to close this case.

2. Sotomayor is not entitled to a certificate of appealability (COA).  A petitioner does

not have absolute entitlement to appeal a district court's denial of his habeas petition. 28 U.S.C. § 2253(c)(1). A district court must first issue a COA. *Id.* "A [COA] may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). To make such a showing, Sotomayor "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)). Sotomayor has not made this showing. Finally, because Sotomayor is not entitled to a COA, he is not entitled to appeal *in forma pauperis*.

**ORDERED** in Tampa, Florida, on September 27, 2017.

*Charlene Edwards Honeywell*
Charlene Edwards Honeywell
United States District Judge

Copies to:
Alexfel Sotomayor
Counsel of Record